MARIAN SEARS & another *vs.* GEORGE R. RUSSELL & others.

By a devise and bequest, in trust to pay the net income to a daughter of the testator for life, and, upon her decease, to select out of the property a sufficient amount to pay a certain sum to her surviving husband, and to appraise and divide the residue and convey it in equal shares to her children or their issue in fee, the trustees take an estate in fee; and upon the death of the daughter, and after payment of the sum to her husband, are bound to appraise, divide and convey the residue to her issue.

Where property is devised and bequeathed in trust to pay the income to a daughter of the testator for life, and, upon her decease, to convey to her children then living, in equal shares, and to the issue of deceased children, to hold to them, their heirs and assigns forever; or, in default of any such child or issue, to convey to the heirs at law of the testator, and in case of the death of any child of the daughter, without issue, after its mother, and before its father, the share of such child not to go to its father, but to the testator's heirs at law; the gift of the share of a child of the daughter, in case of such death of that child, is to those who shall be then the heirs at law of the testator; but such gift is void for remoteness, and therefore the issue of the daughter are entitled, upon her death, to a conveyance in fee.

*It seems*, that in a will devising and bequeathing property in trust to convey it, upon the termination of a life estate, to certain persons or their issue in fee, and, in default of such persons or issue then living, to the testator's heirs at law, a provision that this shall not prevent any of those persons, who shall have arrived at a certain age before the termination of the life estate, from disposing of their shares by will, is inconsistent with and defeats the gift over to the testator's heirs at law.

BILL IN EQUITY by the infant children of Frederic R. Sears and Mary Ann Sears, his deceased wife, against George R. Russell and Francis G. Shaw, trustees under the will of Robert G. Shaw, her father, and the other heirs of the testator, to establish the plaintiffs' right to certain real and personal property of the testator. The parties stated this case :

The will of Robert G. Shaw contained a devise and bequest of real and personal property to said trustees, (jointly with Samuel P. Shaw, who had since resigned that office,) " for the use of my daughter Mary Ann Shaw," " the same to be held by the said trustees, their survivors and survivor, his heirs and assigns, in trust to lease and demise the real estate, and invest the personal estate, to collect the income thereof, to pay from out thereof the cost of repairs, insurance, taxes and other charges, and then in trust to pay over the surplus to the said Mary Ann during her life, for her sole and separate use ; and

in trust further, upon the decease of the said Mary Ann, to grant and transfer the estates so devised in trust to the child or children of the said Mary Ann, then living, in equal shares; the issue of any deceased child to take its parent's share; and in default of any child or issue then living, to convey the same to the heirs at law of the testator."

The will contained similar devises and bequests for the benefit of each of the testator's other daughters and of one son and grandson, and added these provisions :

" In trust further, from time to time, upon the decease of my said son, daughters or grandson before named, as the same shall happen in the order of Providence, to surrender, grant, convey and transfer the said specific shares or portions of such trust property so devised as aforesaid for the use and benefit of such deceased son, daughter or grandson, or the property in which it may then be invested, or so much of it as shall then remain, to the child (or, if more·than one child, to the children) then living, of such deceased son, daughter or grandson, in equal shares, and to the lawful issue of any such child or children, then deceased, by the right of representation, such issue to take the share to which his or her parent, if then living, would be entitled, to hold the same to them and their respective heirs and assigns forever ; or, in default of any child or issue then living, to convey the same to my heirs at law.

" Provided, however, and it is my will and intention, that, if any of my sons in law survive their respective wives, or if my daughters in law survive their husbands, such sons in law or daughters in law so surviving shall be entitled to receive, to his or her own use, before the distribution last aforesaid, the sum of twenty thousand dollars each, to be deducted and paid out of the specific share or portion hereinbefore set aside, assigned and devised in trust for the benefit of such deceased husband or wife, son or daughter aforesaid, in such assets as my said trustees may select, belonging to such share or shares as aforesaid And, having thus provided for my sons in law and daughters in law as shall or may outlive my children, their husbands and wives, I deem it fit and proper that, in ɾase of the decease after-

wards, and without issue, of any of my said grandchildren, they the surviving sons in law or daughters in law should not become seised or possessed, by heirship or otherwise, of any right, property, interest or estate in the said distributive share or shares of said trust property belonging to such grandchildren, any law or usage to the contrary notwithstanding; and I accordingly will and direct that, in case of the decease of any one or more of my grandchildren during the lifetime of such surviving son in law or daughter in law, the distributive share or shares of said grandchildren or either of them so deceasing without issue shall not pass to or vest in such surviving sons in law or daughters in law, but on the contrary I do hereby give and devise the same to my heirs at law.

" Provided however, that nothing herein contained shall prevent or deprive such of my grandchildren before named, who shall be living and have arrived at the age of thirty years at the time fixed for the said distribution, from making a last will and testament, to take effect from and after the decease of such grandchild or grandchildren, giving or devising his, her or their share of the trust property to such person or persons as he, she or they may choose."

The testator further authorized the said trustees, when the time for the distribution of any of the trust estates should arrive, to divide, appraise, convey and transfer the same, and to sell and convey sufficient of the said trust property to pay any share in money.

Mary Ann Shaw was married, and one of the plaintiffs born, after the execution of the will and before the death of the testator, and the other plaintiff was born after the testator's death. Upon the death of the plaintiffs' mother, questions arose as to the title of her children to the property held in trust for her benefit, and this suit was brought to obtain the decision of the court.

The plaintiffs claimed that upon the decease of their mother, it was the intent of the testator, that said trust estate should determine, and that the trustees, after paying to the plaintiffs' father the sum of twenty thousand dollars, should transfer and

convey all said trust fund to the plaintiffs in fee simple; that the gift over to the testator's heirs at law, in case the plaintiffs or either of them should die before their father, was illegal and void on account of remoteness, and could have no effect to limit or restrain the previous gift in fee ; and that the plaintiffs were entitled to receive and hold their portions absolutely.

The defendants admitted that by the terms of the will, said trust fund, upon the decease of the plaintiffs' mother, was to be paid and conveyed to her children in equal shares, after payment of the sum of twenty thousand dollars, and therefore the plaintiffs were apparently entitled to demand a transfer and conveyance thereof; but suggested that by a subsequent provision it was declared to be the testator's intent that if any child should die, without issue, after its mother, living its father, the share of that child should go to the heirs at law of the testator ; and that the defendants were not bound to assume the responsibility of determining whether that limitation was void.

The case was argued in writing by *F. C. Loring,* for the plaintiffs, and *C. W. Loring,* for the defendants.

BIGELOW, J. In the consideration of the important questions raised in this case, and in stating the conclusions to which we have arrived respecting them, we have been greatly aided by the very learned and elaborate argument submitted by the counsel for the plaintiffs.

The first question relates to the nature and extent of the estate taken by the trustees under the will of the testator. This must be determined mainly by a consideration of the objects and purposes of the trust, and not by a strict application of the legal rules of construction to the words by which the limitation to them is created. The rule is well settled, that trustees will be held to take that quantity of interest in estates devised to them, which the exigencies of the trust may demand ; and where lands are devised to trustees to convey to the objects of the testator's bounty, the legal estate necessarily vests in the trustees till they have conveyed it, and it must be commensurate with the estate which they are bound to convey ; if they are to grant a fee, it is necessary they should have a fee

*Doe* v. *Field*, 2 B. & Ad. 564.    *Cleveland* v. *Hallett*, 6 Cush 407.

In the present case, the words of the will are apt and suffi-cient to create a fee in the trustees. If their powers and duties had been limited to the natural life of the testator's daughter, so that after her decease nothing further would have been required of them, it might well have been held that they took an estate only for the life of the *cestui que trust*, notwithstanding that by the strict terms of the will a larger estate seemed to have been vested in them. But the trusts with which they were clothed did not so terminate. Other duties were appointed to them, which could not be executed until after the death of the testa-tor's daughter, and which required an interest to be vested in them larger than an estate *pur auter vie*. They were not only to hold the property during the life of the *cestui que trust*, and pay over to her the net income ; but after her death they were to select, out of the assets in their hands as trustees, an amount sufficient to pay to her surviving husband the sum of twenty thousand dollars ; they were then to appraise and divide the residue of the property in their hands, and to grant and trans-fer the same in equal shares to her children, if living, or their issue, and, in default of any child or issue, to convey the same to the heirs at law of the testator. These superadded duties, to be performed by the trustees after the death of the testator's daughter, are clearly inconsistent with the idea that their estate was to terminate with her life. The power to take a portion of the fund at their discretion, to be paid over to the son in law, and the duty of appraising, dividing and conveying the residue, necessarily require an absolute estate in the trustees, the equita-ble interest being in those to whom the property was to be paid and transferred by them in the execution of the trusts. The nature of the estate which the trustees, upon the death of the testator's daughter, were required to convey to her children or their issue, is even more decisive of this question. The will in terms provides that the estate shall be conveyed to such chil-dren, and the issue of deceased children, " to hold the same to them and their respective heirs and assigns forever." This

Sears & another *v.* Russell & others.

makes it clear that the estate which the trustees were bound to convey to those who should be entitled to it under the will was ultimately to vest as an estate in fee ; and therefore, that the trustees, upon the principles above stated, themselves took an estate in fee.

It is equally clear that this conveyance was to be made upon the decease of the testator's daughter. The duties which then remained to be performed by the trustees all have reference to this event. Such indeed are the express terms of the will. It is, upon her decease, to her child or children " then living," or, in default of child or issue " then living," to the heirs at law of the testator, that the trustees are to make the conveyance. Nothing precedent to this is to be done by them, except to select out of the assets in their hands twenty thousand dollars to be paid to the surviving husband of the *cestui que trust.* But this was also to be done upon the decease of the testator's daughter, and although necessarily prior in time, it was to be essentially part of the same transaction, had relation to the same event, and could not operate materially to postpone the time when the conveyance was to be made by the trustees.

The literal meaning of the language of the will in this particular is fortified by other decisive considerations. One of these is, that if the estate of the trustees is not to be terminated by a conveyance upon or immediately after the decease of the *cestui que trust,* it is not limited by any other provision of the will. No other time is fixed or referred to. Their estate is left wholly indefinite. Such could not have been the intent of the testator. Nor could the trustees, in the absence of any express limitation, claim to hold for an unlimited period. In such case, upon the determination of the life estate of the *cestui que trust,* and the payment of the sum of twenty thousand dollars to the testator's son in law, as no further act was to be done, except to make the conveyance, it would follow as a legal conclusion that this remaining duty was then to be performed. Their right to hold the legal estate could not be held to extend beyond the time necessary for the full discharge of the duties imposed by the trust.

Another consideration leading to the same conclusion is found in the absence of all directions in the will concerning the management of the estate and the payment and disposal of the income by the trustees after the death of the testator's daughter. During her life, the provisions of the will in these particulars are clear and explicit. The omission of them in providing for the event of her death clearly indicates an intent of the testator to terminate the trust upon the happening of that contingency and the conveyance of the estate according to the provisions of the will.

It follows from these views, that the estate which vested in the trustees was not an estate for the life of the testator's daughter, but a fee; and that upon her death, after payment to her surviving husband of the sum of twenty thousand dollars, they are bound to appraise, divide and convey the residue to her children, who already have the equitable interest in the estate, in conformity with the directions contained in the will.

We are thus brought to a consideration of the nature and quality of the estate which the plaintiffs will take under the conveyance to be made to them by the trustees. There would have been no room for doubt or question on this point, if the will had contained no provision beyond the direction to the trustees to convey the estates to the testator's grandchildren, if living, or to their issue, or in default of such children or issue, to the heirs at law of the testator. The plaintiffs would then very clearly have been entitled to an estate in fee simple.

If the devise had been to the children of the daughter and their heirs forever, but, if they died without issue, then to the heirs at law of the testator, it would have created an estate tail by implication. The gift over would then have been on an indefinite failure of issue, and the law, implying an intent in the testator that the issue were to take the estate in succession, as children and heirs of the parent, would cut down the fee to an estate tail. *Nightingale* v. *Burrell*, 15 Pick. 104. *Hall* v. *Priest*, 6 Gray, 18.

But no such implication can be raised under the provisions of this will. The gift over is not on an indefinite failure of issue

of the daughter, but on such failure in the lifetime of the husband. The intent of the testator is expressly declared to be, not for the benefit of the issue of the children, but to exclude their father from inheriting the estate from them. Upon his death, their estates are to become absolute, and if they should die in his lifetime, leaving issue, the estate would descend to such issue in fee. The description of the contingency, therefore, upon which the gift over is to take effect, is such that it must be construed to be an executory devise. The gift to the children was of a fee; it cannot be cut down to an estate tail by implication; there can be no remainder after the gift of a fee; it is the limitation of a fee on a contingency after a previous estate in fee, and must take effect, if at all, as an executory devise. The heirs at law of the testator, to whom the estates are devised upon the happening of the contingency, if they do not take by descent, must claim as executory devisees.

But it is urged, that the limitation being to the heirs at law of the testator, the estate must vest in them by descent, and that they cannot take as purchasers under the will. This argument is founded on the well settled rule of law, that a devise to an heir, of the same estate in nature and quality as that to which he would be entitled by descent, is void. In such cases, the heir takes by descent and not as purchaser. *Ellis* v. *Page*, 7 Cush. 161, and cases there cited. If this rule applies to the present case, then it would follow that the gift over to the heirs at law would fail as an executory devise, so that their title would not depend upon the principles of law by which estates of that nature are governed.

But it is entirely clear that this devise over to the heirs of the testator does not come within the recognized tests by which an heir is held to be in by descent and not by purchase. It is essential to a title by descent, that the heir should take the same estate in quantity and quality, as if no will had been made and the estate had been left to descend to him; and this rule is not affected by carving out of the fee a prior particular or contingent estate, or subjecting it to an executory devise. All that is necessary to the operation of the rule is, that when the estate

vests in the heirs, they should hold it by the same tenure and in like manner as if the devise had been omitted. If the nature or quality of the estate is changed when it comes to the heirs, or if they take it in different shares or proportions, the descent will be broken, and they must come in as purchasers under the will. *Ellis* v. *Page*, 7 Cush. 164. *Reading* v. *Royston*, 1 Salk. 242, 2 Ld. Raym. 829, and 1 Com. R. 123. 6 Cruise Dig. tit. 38, *c.* 8, §§ 9, 10.

Applying this rule to the present case, it is clear that the heirs at law of the testator must take as devisees, and not by descent. The limitation over to them is contingent until the prescribed event shall occur. The devise is to those who shall be his heirs when the contingency arises, and not to those who were his heirs at the time of his decease. They must take the estate under and by force of the will, in such proportions as it may vest in them when the event occurs, and not as heirs at law in the shares to which they would have been entitled if the devise over to them had been omitted. Such, we think, was clearly the intent of the testator. The rules of construction, that the word "heirs" in a will is usually construed to mean those who are such at the time of the testator's decease; and that estates created by devise are to be held to be vested rather than contingent; must give way to the controlling rule of interpretation that the intent of the testator is to govern, if it does not conflict with the rules of law. *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 70, 80, 89. *Doe* v. *Frost*, 3 B. & Ald. 546. *Richardson* v. *Wheatland*, 7 Met. 169. *Olney* v. *Hull*, 21 Pick. 314. And if it be found to conflict, it does not change the rule of construction. The will must fail of effect so far as it violates the rules of law, not because the intent of the testator does not control its construction, but because the law will not permit his intent to be accomplished. *Brattle Square Church* v. *Grant*, 3 Gray, 158. *Hall* v. *Priest*, 6 Gray, 22, 23.

The intent of the testator, in making the limitation to his heirs at law in this clause of the will, is not left in any doubt. It is expressly declared to be to prevent his son in law from inheriting any portion of the testator's estate as heir to his children.

The devise to the heirs was to take effect only upon one contingency. If the child survived the father, or died in his lifetime, leaving issue, the heirs at law were to take nothing. The object of the testator was, not to benefit his heirs, but to break the legal course of descent in a certain contingency, so as to exclude his son in law from participating in his estate beyond the specific sum bequeathed to him.

To carry out this intent, it is necessary to construe the limitation to heirs as being to those who should hold that relation when the contemplated contingency should happen. If it should be held to mean a devise to the heirs of the testator at the time of his decease, this declared purpose would be defeated. The right or possibility of taking the estate in the prescribed contingency would then have vested in part in the testator's daughter at his decease, as one of his heirs; on her death, her share or proportion of this right or possibility would have descended to her children; and, in case of their death, without issue, in the lifetime of their father, it would go by descent to him — the very result which the testator sought most sedulously to prevent by this limitation to his heirs. It cannot be supposed that the testator intended to make a provision, the effect of which would be to admit his son in law to a share in that part of his estate from which he expressly declared it to be his purpose to exclude him.

But this is not the whole extent to which this intent might be defeated, if the term " heirs at law " in this devise should be construed to be the heirs general of the testator at the time of his decease. It would then be a vested interest in them; if any of his children should die, leaving issue, this interest would descend to their children; in case of their death, it would go to their surviving parent, the son in law or daughter in law of the testator To illustrate by an event which is understood to have already occurred: One of the testator's sons has deceased since the probate of the will, leaving an only daughter, who, as her father's representative, takes his right to this contingent interest, if it was vested at the time of the testator's death. If the daughter should die, this interest would go to her mother, a

daughter in law of the testator; so that in the event of the death of the plaintiffs or either of them, that daughter in law would take, as heir of her own daughter, a portion of the estates devised to these plaintiffs. The result of such an interpretation of this gift over to the heirs would therefore be, in the supposed contingency, to give a portion of the testator's estate, not only to his son in law, the father of the plaintiffs, but also to a daughter in law, the wife of one of his sons, contrary to his distinctly declared intention; and the same result would follow in the like contingency in regard to the estates devised in similar terms to the testator's other children.

This view of the intent of the testator in the gift over to his heirs at law is greatly strengthened by the use of the same words with a similar meaning in a preceding part of the same clause in the will; by which he directs the trustees, in the event of the death of his daughter, without issue, to convey the estate, which had been held by them in trust for her use, to his heirs at law. Here he clearly intended that the conveyance should be made to those who should be his heirs at the time the contingency should occur, and not to those who were his heirs at the time of his death. If the latter construction were adopted, it would follow that his daughter, being one of his heirs at his decease, had an equitable estate for life, and also a vested right to a conveyance in fee of the same estate, upon her own decease— an interpretation manifestly absurd; as it would present the anomaly of the creation of a trust estate for life for the separate use of the daughter, carefully guarded so as to be beyond her own control and that of her husband, accompanied with a vested right to a conveyance of the whole estate in fee, subject to her absolute disposal. The language of the will and the intent of the testator are coincident. The trustees were to convey to persons *in esse* when the contingency should arise. The conveyance was to be made to persons then answering the description of the testator's heirs at law, and not to those who were such at his decease, one of whom must necessarily have died before the contingency could arise. This interpretation of the term " heirs at law," as used by the testator in directing a conveyance

by the trustees, is too clear to admit of doubt. It is reasonable to infer that the same words were used with like meaning in the very next clause of the will, in disposing of the same estates in the event of the occurrence of another contingency.

Without enlarging further upon this part of the case, the considerations already suggested render it certain that the intent of the testator was to devise the estates to those who should be his heirs at law at the time the gift over should take effect. They cannot claim by descent, because the estate on the happening of the prescribed contingency would not vest in those who were the heirs of the testator at the time of his decease, and those who would be entitled could not take in the same proportions as they would have done, if the devise over had been omitted. They must take, if at all, under the will as purchasers by force of the executory devise.

The only remaining question is, whether the intent of the testator can be carried out consistently with the rules of law; that is, whether the gift over as an executory devise will certainly take effect within the limits which are essential to its validity. The principles applicable to estates of this nature have been fully considered and explained in a recent case. *Brattle Square Church* v. *Grant*, 3 Gray, 142. It was there held, that a limitation by way of executory devise, which may possibly not take effect within the term of a life or lives in being at the death of the testator, and twenty one years afterwards, (adding, in case of gestation, about nine months,) is void for remoteness. In the present case, the limitation over was not to take effect until after the death of the testator's daughter, and after the death of her children, including those born after the death of the testator, or any of them. It was not a limitation upon a life in being, with twenty one years superadded, but upon a life in being, and after its termination upon a life or lives not in being at the time of the testator's death, and which might continue for fifty years or more after the life of the first taker. Indeed the gift over could not take effect within the prescribed period as to the share of any child born after the testator's death, unless it died within twenty one years after its mother.

Standing by itself, therefore, as a devise to the mother, and, after her death, to her children, born or unborn at the testator's death, and, on their decease, to those who should be then the heirs of the testator, it was clearly too remote, because it was a limita tion which possibly might not take effect until after the termina. tion of a life in being at the testator's death, to wit, the life of the testator's daughter, and more than twenty one years after-wards; that is, until the death of her after-born children, which might not occur within the allotted period.

But it may be suggested, that as the gift over was limited on the death of a child or children, in the lifetime of the father, without issue, and as the father was living at the time of the testator's death, it is in fact a limitation on a life in being, and does not violate the rule of law. It is true that, as events have transpired since the death of the testator — to wit, by the death of his daughter, leaving a husband and children alive — the devise to the heirs would vest, if at all, before the expiration of the prescribed period. But the point of time at which the will is to be construed is at the testator's death. It is then that its language speaks. A devise must be then legal, or it must fail. It is not sufficient that on the happening of certain events the gift over may take effect, and, if originally limited to those events, would have been valid; but it must appear to be legal and valid in all the events which, at the time when the will takes effect, may by possibility occur. A limitation by way of executory devise to be valid must, *ex necessitate*, take effect within the prescribed period. If the event upon which the estate is limited, may, by possibility, not occur within that time, it is too remote. *Brattle Square Church* v. *Grant*, 3 Gray, 153, and cases there cited.

If, in the present case, the devise had been to the daughter for life, and on her death to her children in fee, but if the children or either of them should die without issue, in the lifetime of any husband of the daughter, living at the testator's death, then to the heirs of the testator, it would not have been liable to the objection of remoteness; because it would be limited over on an event which must occur within the allowed period, to wit,

a life in being at the testator's death.    But although, at the time of the death of the testator, his daughter had a husband living, his subsequent decease was neither impossible nor improbable.    In the event of his death, she might have contracted a second marriage and had issue by a husband who was not born at the time of the death of the testator.    Such an event was certainly improbable, but it was not impossible, and so the devise over might by possibility not have taken effect during a life in being at the testator's death, and more than twenty one years thereafter.    It was therefore void for remoteness.

Nor does it make any difference in the operation of the rule against perpetuities upon the devise in question, that the gift over might take effect, as being within the proper limits in relation to a portion of the estate devised, although void as to another portion, as being too remote.    For instance; it might be contended that as to the portions of the estate which would go to the grandchildren of the testator, born during his life, or during the lifetime of his son in law living at his decease, the gift over was not open to objection on the ground of remoteness, although it might be as to the shares of other grandchildren, the issue of a second marriage of the daughter of the testator, and born after his death.    But the difficulty is, that the shares of the grandchildren were contingent till the death of their mother.    The trustees were to convey to the children then living.    Those who had previously deceased took no vested interest, until the event happened.    The fee remained in the trustees, who were to convey it to those of her children who survived her.    Under this devise, therefore, it was possible that the entire estate would go to children of the daughter, born after the testator's death, and by a husband not then living.    Such might be the result, if the children of the first marriage should die before their mother; and in that event the whole estate would be limited over on a contingency too remote.    As the validity of the gift over must be determined on the principle that it cannot by possibility take effect beyond the period allowed by law, it follows that this devise must fail, because the limitation to the heirs is made to depend on an event

which may not happen until after that period has expired. The possibility, however remote, that the limitation may not take effect within the time fixed by the rule, is fatal to its validity. Lewis on Perp. 170. *Newman* v. *Newman,* 10 Sim. 51. *Dodd* v. *Wake,* 8 Sim. 615. See also *Challis* v. *Doe,* 18 Ad. & El. N. R. 231, 247.

The entire devise over to the heirs must therefore fail as being too remote; and as the rule applies to every executory limitation by will, whether of real or personal estate, (Lewis on Perp. 169,) the whole of the property comprehended in the gift to the heirs of the testator must vest in the plaintiffs, free from the devesting limitation. The fee to be conveyed and the personal property to be transferred by the trustees to the plaintiffs, being subject to a gift over, which is void for remoteness, remain in them absolutely, unaffected by the limitation to the heirs of the testator. *Brattle Square Church* v. *Grant,* 3 Gray, 156.

We are inclined to the opinion that the gift over, being an executory devise, is void for another reason. By the will, the testator has given to his grandchildren the power to make a will and dispose of the estates given over to his heirs, if they shall have arrived at the age of thirty years at the time when they are to receive the property from the trustees ; that is, on the death of their mother. One of the distinguishing features of an executory devise is its indestructibility by the first taker. Here is a power of disposition expressly given to the children, which is inconsistent with the gift to the heirs. See *Holmes* v. *Godson,* 35 Eng. Law & Eq. R. 591, and cases cited. But it is unnecessary to determine this point, and we forbear to express an opinion upon it.                    *Decree for the plaintiffs.*